**Affirmed and Memorandum Opinion filed October 12, 2023.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-23-00346-CV

---

## IN THE MATTER OF T.B.

---

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2022-01632J**

---

## MEMORANDUM OPINION

Appellant T.B. is a juvenile charged with capital murder. *See* Tex. Penal Code § 19.03. He challenges the order granting the State's petition for the juvenile court to waive jurisdiction and transfer him to criminal district court. *See* Tex. Fam. Code § 54.02. Appellant challenges the order on the grounds that the evidence is legally and factually insufficient to support (1) the probable cause finding; and (2) the section 54.02(f) findings. We affirm.

### BACKGROUND

On February 27, 2021, appellant and four accomplices allegedly robbed and

murdered the complainant, Jaylen Brawley, at an apartment complex. Appellant was 15 years old at the time of the alleged robbery/murder. Still photographs from surveillance video footage showed appellant and his half-brother Trenten Morgan arrive at the complex accompanied by Ja'Corey Benjamin, Antwraine Garror, and Markell Hatchett. After arresting Garror police obtained a search warrant for Garror's phone and discovered a number of text messages in which Garror tried to arrange similar robberies to the one under investigation. This led to warrants for several Instagram accounts, including appellant's account. The investigating officer, Detective Lance Osborn, saw a photograph of appellant on his Instagram account in which appellant was "wielding a firearm that looked remarkably similar to the one that was recovered at the scene of the homicide." Osborn testified that the weapon in the photo was the same brand and had the "same size extended mag." The weapon was also the same make, model, caliber, and size of the firearm that was recovered from the robbery/murder scene.

Osborn testified that two 9mm semi-automatic firearms were recovered from the scene, as well as a base plate and a spring that had separated from an empty magazine.[1] One of the firearms was a Glock with a large extended magazine. The other 9mm firearm was a jammed Taurus located near the complainant's body, and identified as the complainant's weapon. The crime scene unit swabbed the weapon, shell casings, and unfired cartridge casings for DNA. Officers also completed buccal swab warrants for appellant and the other suspects. The DNA found on the unfired cartridge casings that appeared to have come from the extended magazine was identified as appellant's DNA. Both appellant's and Morgan's DNA were found on the magazine.

---

[1] Osborn later testified that it appeared the gun was dropped and when it hit the ground, the pressure of the spring caused it to eject all of the remaining ammunition.

Osborn reviewed surveillance video from the area of the apartment complex, which showed appellant, Morgan, Benjamin, and Garror entering the front gate of the apartment complex in Benjamin's vehicle.[2] The suspects then walked from the north parking lot where the vehicle was parked to the south parking lot where the robbery/murder occurred. Osborn learned through text messages and Instagram posts that Garror had previously made arrangements to meet the complainant at the complex to purchase a large quantity of marijuana.

The complainant arrived at the complex alone carrying the marijuana in a blue camouflage backpack. The surveillance video showed Garror meeting the complainant at the front of the complex and waving him in. The complainant drove to the north parking lot and then walked to a secluded area, out of view of the surveillance cameras, near an alleyway where appellant, Morgan and Hatchett were waiting. Although the surveillance cameras did not capture the actual shooting, the footage shows Hatchett running from the scene carrying the complainant's blue camouflage backpack. Appellant was shot once during the robbery, and the surveillance photos show Benjamin and Morgan attempting to lift appellant's body into a vehicle to take him to the hospital. The complainant died at the scene from eleven gunshot wounds. Osborn further testified that appellant and Morgan exchanged a series of text messages indicating they planned to bring guns to a robbery later on the day of the offense.

Osborn testified that probable cause to arrest appellant was based on appellant's Instagram photo with the weapon, his DNA on the unfired cartridge casings and the magazine, and the series of text messages indicating he and the other suspects were planning to bring a gun to a robbery that day.

---

[2] Still photographs from the surveillance video were admitted into evidence at the hearing.

Osborn testified to several Instagram message exchanges both before and after the robbery/murder. The exchanges suggested that appellant and his brother had committed prior robberies and planned to commit further robberies. The messages also indicated that appellant would use a gun in those robberies. One of the messages mentioned a "Piru," which Osborn testified was a subset of a larger gang known as "the Bloods."

When appellant was arrested for the robbery/murder officers found a 9mm Glock underneath the seat of the car in which appellant was sitting. At the time of his arrest in August appellant was wearing a balaclava, which covered his entire face. The arresting officer testified that the balaclava was a type that a person may wear to conceal his identity while committing a robbery. Appellant was charged with unlawfully carrying a stolen weapon.

Victor Bedolla, a gang liaison at the Harris County Juvenile Probation Department, testified that he learned from the Houston Police Department that appellant was a member of "Five Deuce Hoover Gangster Crips," a nationally recognized gang.

Caroline Haskamp, a doctoral intern at the Harris County Juvenile Probation Department, testified that she conducted an evaluation of appellant. The evaluation was ordered to aid the juvenile court in gathering information on three factors related to certification: (1) risk for dangerousness; (2) level of sophistication and maturity; and (3) treatment amenability. Haskamp testified that appellant's risk for dangerousness when excluding the charged robbery/murder was moderate. When the charged offense was included his risk of dangerousness became high. As to appellant's sophistication and maturity Haskamp rated appellant as moderate. Appellant was also rated moderate on treatment amenability. Haskamp observed evidence that the robbery/murder was premeditated. She also testified there was no

4

evidence that appellant was remorseful. In Haskamp's evaluation she determined there were concerns about appellant's impact on the community. Haskamp based this opinion on appellant's social media photos holding weapons as well as identifying with negative peers who reported criminal behavior. In Haskamp's opinion those concerns could be addressed with intervention.

The juvenile court found that the State met its burden to show probable cause and for the juvenile court to waive jurisdiction. This appeal followed.

## ANALYSIS

In two issues appellant challenges the legal and factual sufficiency of the evidence to support the juvenile court's findings of probable cause and waiver of jurisdiction.

### I.    Standard of Review and Applicable Law

Juvenile courts have exclusive original jurisdiction over cases involving delinquent conduct by children between 10 and 17 years old. Tex. Fam. Code §§ 51.02(2)(A), 51.04(a). Delinquency proceedings against minors proceed in juvenile court under the Juvenile Justice Code. *See* Tex. Fam. Code §§ 51.01–61.107. A juvenile court may waive its exclusive original jurisdiction under certain conditions and allow transfer of the proceeding to a district court for criminal prosecution. Tex. Fam. Code § 54.02(a), (j). "Generally, the transfer of a juvenile offender from a juvenile court to a criminal district court for prosecution as an adult should be regarded as the exception, not the rule." *Matter of J.W.W.*, 507 S.W.3d 408, 414 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

In a juvenile transfer proceeding, the State must produce evidence that persuades the juvenile court, by a preponderance of the evidence, that waiver of its exclusive original jurisdiction is appropriate. *Moon v. State*, 451 S.W.3d 28, 36 (Tex.

Crim. App. 2014), *overruled on other grounds by Ex parte Thomas*, 623 S.W.3d 370, 40–41, 45 (Tex. Crim. App. 2021).

The statutory requirements for waiver of jurisdiction and transfer are as follows:

(1) the child is alleged to have violated a penal law of the grade of felony;

(2) the child was:

(A) 14 years of age or older at the time he is alleged to have committed the offense, if the offense is a capital felony, an aggravated controlled substance felony, or a felony of the first degree, and no adjudication hearing has been conducted concerning that offense; or

(B) 15 years of age or older at the time the child is alleged to have committed the offense, if the offense is a felony of the second or third degree or a state jail felony, and no adjudication hearing has been conducted concerning that offense; and

(3) after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

Tex. Fam. Code § 54.02(a).

In making the determination required by section 54.02(a)(3), the juvenile court shall consider, among other matters, the following:

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) the sophistication and maturity of the child;

(3) the record and previous history of the child; and

(4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

Tex. Fam. Code § 54.02(f). Any combination of these criteria may suffice to support a waiver of jurisdiction; not every criterion need weigh in favor of transfer. *Moon*, 451 S.W.3d at 47 & n.78. "The trial court is bound only to consider these . . . factors in deciding whether to waive jurisdiction. The court need not find that each factor is established by the evidence." *Matter of D.L.N.*, 930 S.W.2d 253, 258 (Tex. App.— Houston [14th Dist.] 1996, no writ).

Our review of a transfer order is two-pronged. First, we review the juvenile court's findings under traditional sufficiency-of-the-evidence principles. *Matter of H.W.*, No. 14-23-00141-CV, 2023 WL 4188363, at *4 (Tex. App.—Houston [14th Dist.] June 27, 2023, no pet. h.). Under a legal sufficiency challenge, we credit evidence favorable to the challenged finding and disregard contrary evidence unless a reasonable fact finder could not reject the evidence. *Id*. at *4. If more than a scintilla of evidence supports the finding, the no-evidence challenge fails. *Id*. Under a factual sufficiency challenge, we consider all the evidence presented to determine if the court's findings are against the great weight and preponderance of the evidence so as to be clearly wrong or unjust. *Id*.

Second, we review the juvenile court's waiver decision for an abuse of discretion. *See Moon*, 451 S.W.3d at 47. That is, in reviewing the juvenile court's conclusion that the seriousness of the offense alleged and/or the background of the juvenile calls for criminal proceedings for the welfare of the community, we ask, in light of our own analysis of the sufficiency of the evidence to support the section 54.02(f) factors and any other relevant evidence, whether the juvenile court acted without reference to guiding rules or principles. *Matter of C.M.M.*, 503 S.W.3d 692, 701 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). A juvenile court abuses its discretion when its decision to transfer is essentially arbitrary, given the evidence upon which it was based. *Moon*, 451 S.W.3d at 47. By contrast, a waiver decision

representing "a reasonably principled application of the legislative criteria" generally will pass muster under this standard of review. *Id*. at 49.

## II. Sufficient evidence supports the juvenile court's finding of probable cause.

In his first issue, appellant contends the record does not support a finding of probable cause to believe he committed the alleged offense because he was shot by the complaining witness and was unaware of the plans of the other suspects.

"Probable cause" is defined as sufficient facts and circumstances to warrant a prudent person to believe the suspect committed or was committing the offense. *Matter of D.L.N.*, 930 S.W.2d at 356. The probable cause standard of proof embraces a practical, common-sense approach rather than the more technical standards applied in the burdens of proof of either beyond a reasonable doubt or preponderance of the evidence. *Id*. Probable cause is based on probabilities; it requires more than mere suspicion but less evidence than that needed to support a conviction or support a finding by a preponderance of the evidence. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997).

A person commits capital murder if the person intentionally causes the death of an individual in the course of committing or attempting to commit robbery. *See* Tex. Penal Code §§ 19.02(b), 19.03(a)(2). A person commits the offense of robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Penal Code § 29.02.

Under the law of parties, a person may be convicted as a party to an offense if the offense is committed by his own conduct or by the conduct of another for which he is criminally responsible. Tex. Pen. Code § 7.01(a). A person is criminally responsible for an offense committed by the conduct of another if, acting with intent

8

to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Tex. Pen. Code § 7.02(a)(2).

Evidence at the certification hearing reflected that appellant and his brother planned to commit a robbery with guns on the day of the offense. Appellant posted photos of himself holding a weapon similar, if not identical, to the weapon allegedly used to rob and murder the complainant. DNA found on the magazine from the weapon, shell casings, and unfired cartridge casings matched appellant's DNA.

The State thus presented sufficient evidence that probable cause existed that appellant, as a principal, or under the law of parties, committed the alleged offense of capital murder. *See Matter of C.C.*, 930 S.W.2d 929, 933 (Tex. App.–Austin 1996, no writ) ("Probable cause exists where there are sufficient facts and circumstances to warrant a prudent person to believe the suspect committed the offense."); *see also Matter of B.C.B.*, No. 05-16-00207-CV, 2016 WL 3165595, at *3 (Tex. App.–Dallas 2016, pet. denied) (mem. op.) (although a juvenile court hearing to determine whether to waive jurisdiction and transfer a juvenile for trial as an adult is subject to essentials of due process and fair treatment, it is not required to conform to all of the requirements of a criminal trial).

Considering the totality of the circumstances in the light most favorable to the juvenile court's order, we conclude the evidence is legally sufficient to support the court's finding of probable cause. Considering all the evidence we conclude the court's finding is not so against the great weight and preponderance of the evidence so as to be clearly wrong or unjust. We overrule appellant's first issue.

## II.    Sufficient evidence supports the juvenile court's section 54.02(f) findings.

In his second issue, appellant asserts the juvenile court abused its discretion in waiving its exclusive juvenile jurisdiction and transferring the case to district court

because the evidence is legally and factually insufficient to support the court's section 54.02(f) findings.

The juvenile court determined that, because of the seriousness of the offense alleged and appellant's background, the welfare of the community requires criminal rather than juvenile proceedings. *See* Tex. Fam. Code § 54.02(a)(3). The court is obligated to consider the factors set forth in section 54.02(f) to make the determination required under section 54.02(a)(3).

In its order waiving its exclusive jurisdiction and transferring appellant's case to the criminal district court for appellant to stand trial as an adult, the juvenile court stated that it found that appellant was charged with a violation of a penal law of the grade of felony, namely "Capital Murder," appellant was "14 years of age or older at the time of the commission of the alleged offense," there was probable cause to believe that appellant committed the offense, and "because of the seriousness of the alleged Capital Murder, and [appellant's] conduct during it, the welfare of the community requires criminal proceedings." The juvenile court noted that in making that determination, it considered whether the offense was against person or property, giving greater weight "to this offense which was committed against the person of another." The court also considered the sophistication and maturity of appellant, "the record and previous history of" appellant, and "the prospects of adequate protection of the public and the likelihood of reasonable rehabilitation of the child by use of procedures, services and facilities available to the Juvenile Court." We review the section 54.02(f) factors in turn.

## A.    Offense against person or property

The juvenile court found that appellant is accused of an offense against a person, that aspects of the alleged offense as well as appellant's alleged participation are egregious, and, therefore, this factor gives greater weight in favor of

discretionary transfer. *See* Tex. Fam. Code § 54.02(f)(1) (offenses against the person are afforded greater weight in favor of transfer). Specifically, the court relied on photographs from the surveillance videos in addition to text messages and social media posts to find that appellant was part of a coordinated plan to rob and murder the complainant.

## B. Sophistication and maturity of appellant

In reviewing this factor, the juvenile court had not only Haskamp's testimony but her report admitted into evidence. Haskamp's psychological evaluation noted that appellant exhibited a moderate degree of sophistication and maturity when compared with other juveniles his age. Haskamp also noted that based on the Risk-Sophistication-Treatment Inventory (RSTI) administered during psychological testing, appellant exhibited a high level of sophistication and maturity. The RSTI reflects the individual's level of autonomy, internal locus of control, decision-making capacities, and degree of emotional attunement. Haskamp opined that despite his RSTI results appellant's level of maturity was moderate due to his lower cognitive and adaptive functioning scores. The evaluation noted that evidence from social media reflected that appellant "evaluates antisocial behaviors positively." The report further noted that appellant maintained an awareness of the wrongfulness of his crimes and understood behavioral norms, but continued to engage in criminal behavior. The report noted that appellant had "an understanding of right and wrong[.]"

The report also assessed appellant's knowledge of basic information and noted that appellant "demonstrated an understanding of court proceedings and indicated he is willing to assist his counsel in his defense." Appellant identified his defense attorney and understood the attorney's role to "defend my case." Appellant understood that if he was truthful with his attorney, the attorney could "defend me

better[.]" Appellant accurately identified the prosecutor as the attorney who is "against [him]." After being told the meaning of certification and the purpose of a magistrate warning, appellant expressed the ability to recall the information and understand the consequences of certification. Appellant accurately identified the juvenile trial judge and understood the court's role in the certification process. Appellant also expressed that he understood the seriousness of the charge of capital murder against him.

In assessing the sophistication and maturity of the child, the juvenile court places emphasis on whether the evidence shows that the child knew right from wrong and could assist his attorney in his defense. *See In re K.J.*, 493 S.W.3d 140, 151–52 (Tex. App.—Houston [1st Dist.] 2016, no pet.) Evidence that the child understands the seriousness of the charge against him as well as the proceedings support a juvenile court's finding that the child's sophistication and maturity weigh in favor of transfer. *Bell v. State*, 649 S.W.3d 867, 892–93 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd).

Appellant emphasizes that the psychological evaluation was completed two years after the offense occurred and may not reflect appellant's level of sophistication and maturity at the time of the offense. Haskamp testified, however, that the assessment takes into consideration the child's age at the time of the offense.

Based on the record before us, we conclude that the juvenile court had more than a scintilla of evidence to support its finding that appellant's sophistication and maturity weighed in favor of certification as an adult and, thus, is supported by legally sufficient evidence. *See Moon*, 410 S.W.3d at 371. Further, reviewing all the evidence, considering any evidence contrary to the juvenile court's finding, we conclude that the juvenile court's finding that appellant's sophistication and maturity weighed in favor of certification as an adult was not so against the great weight and

preponderance of the evidence as to be clearly wrong or unjust.

## C.    Appellant's record and history

The evidence from the transfer hearing did not show that appellant had been previously adjudicated delinquent by a juvenile court. The psychological evaluation noted that appellant had no history of community supervision. The evaluation also noted that appellant had several behavioral infractions while in detention, the majority of which pertained to refusal to attend school. Appellant had behavioral infractions that pertained to physical altercations in addition to an assault of another resident. Appellant received an infraction for placing a toothbrush in the door of his cell and kicking it repeatedly until the door opened. There was also evidence at the transfer hearing that appellant was charged with unlawfully carrying a weapon after the alleged capital murder occurred. Although appellant denied gang involvement, there was testimony at the hearing and evidence from social media that showed appellant was involved in gang activity.

Appellant asserts his record and previous history do not weigh in favor of transfer because before the alleged capital murder "he had never been in trouble with the juvenile justice system[.]" A child need not have a prior record with the juvenile department for his record and previous history to weigh in favor of transfer. *Bell*, 649 S.W.3d at 895; *see also Matter of D.R.B.*, No. 01-16-00442-CV, 2016 WL 6873067, at *7 (Tex. App.—Houston [1st Dist.] Nov. 22, 2016, no pet.) (mem. op.) ("Section 54.02(f)(3) asks the court to consider the record and previous history of the child, but it does not limit the court to adjudicated delinquent behavior."). Transfer may still be warranted even when it is a child's first referral to the juvenile system. *See Rodriguez v. State*, 478 S.W.3d 783, 788 (Tex. App.—San Antonio 2015, pet. ref'd). The juvenile court may consider disciplinary measures taken while the child is in the juvenile detention facility following the alleged commission of the

13

offense in determining whether the child's record and previous history weigh in favor of transfer. *See In re K.J.*, 493 S.W.3d at 152–53. As to appellant's gang affiliation, although there was conflicting evidence presented to the juvenile court as to appellant's gang activities, the juvenile court, as the fact finder, was the sole judge of the witnesses' credibility, could choose to believe or disbelieve a witness's testimony, in whole or in part, and was tasked with weighing the evidence and resolving any inconsistencies. *See Matter of K.M.*, No. 01-20-00121-CV, 2020 WL 4210493, at *12 (Tex. App.—Houston [1st Dist.] July 23, 2020, no pet.) (mem. op.) (juvenile court may give significant weight to a child's gang affiliation when assessing the child's previous history, even when the evidence on the subject is disputed).

Based on the record before us, we conclude that the juvenile court had more than a scintilla of evidence to support its finding that appellant's record and history weighed in favor of certification as an adult and, thus, is supported by legally sufficient evidence. *See Moon*, 410 S.W.3d at 371. Further, reviewing all the evidence, considering any evidence contrary to the juvenile court's finding, we conclude that the juvenile court's finding that appellant's record and history weighed in favor of certification as an adult was not so against the great weight and preponderance of the evidence as to be clearly wrong or unjust.

### D. Protection of public and likelihood of rehabilitation

Haskamp's psychological evaluation noted that appellant's "level of interest and motivation for treatment [was] significantly lower than youth currently in treatment settings." Information gleaned from appellant's social media records as well as a weapon-related referral following the alleged capital murder suggested an absence of remorse from appellant. In Haskamp's opinion, appellant's amenability to treatment was moderate.

14

The juvenile court may consider the serious nature of the offense committed by the child, as well as any gang affiliation, in determining whether the protection of the public and the likelihood that the child can be rehabilitated weigh in favor of transfer. *See Matter of J.C.B.*, No. 14-18-00796-CV, 2019 WL 758403, at *7 (Tex. App.—Houston [14th Dist.] Feb. 21, 2019, no pet.) (mem. op.). The court may also consider the age of the child and the limited amount of time the child could be subject to the juvenile justice system. *Matter of K.M.*, 2020 WL 4210493 at *13.

Appellant asserts this factor weighs against transfer because appellant has never had the opportunity to participate in the programs offered by the Juvenile Justice Department. As appellant pointed out, however, he was 17 years old at the time of the transfer hearing. The juvenile court heard evidence that appellant lacked remorse for his offense and that his treatment amenability was moderate. The juvenile court could have inferred that the amount of time appellant would spend participating in programs offered through the Juvenile Justice Department would be inadequate to protect the public and rehabilitate him. *See Faisst v. State*, 105 S.W.3d 8, 12–15 (Tex. App.—Tyler 2003, no pet.) (upholding finding that juvenile justice system was inadequate to protect public and rehabilitate juvenile based on evidence that system could not address serious offense—intoxication manslaughter—given that juvenile was already 17 at certification hearing).

Based on the record before us, we conclude that the juvenile court had more than a scintilla of evidence to support its finding that consideration of adequate protection of the public as well as the likelihood of reasonable rehabilitation weighed in favor of certification as an adult; and, thus, the finding is supported by legally sufficient evidence. Further, reviewing all the evidence, considering any evidence contrary to the juvenile court's finding, we conclude that the juvenile court's finding that consideration of adequate protection of the public as well as the likelihood of

reasonable rehabilitation weighed in favor of certification as an adult was not so against the great weight and preponderance of the evidence as to be clearly wrong or unjust.

For all the foregoing reasons, we conclude the evidence was legally and factually sufficient to support the juvenile court's findings under section 54.02(f).

## III. The juvenile court did not abuse its discretion in deciding to waive jurisdiction and transfer the case.

We next consider whether the juvenile court's decision to waive jurisdiction and transfer the case was "essentially arbitrary" and "without reference to guiding rules or principles." *Moon*, 451 S.W.3d at 47. The juvenile court's findings are supported by legally and factually sufficient evidence. In addition, the juvenile court correctly applied the statutory criteria governing the waiver of its jurisdiction to its fact findings. On this record, we cannot say that the juvenile court's decision was arbitrary or made without reference to guiding rules or principles. *See Moon*, 451 S.W.3d at 47. Accordingly, we find no abuse of discretion in the juvenile court's decision to waive jurisdiction and transfer appellant to district court. We overrule appellant's second issue.

### CONCLUSION

We affirm the juvenile court's order waiving juvenile jurisdiction and transferring appellant to criminal district court.


/s/     Jerry Zimmerer
        Justice


Panel consists of Justices Wise, Zimmerer, and Poissant.